William Ray RUSSELL, Plaintiff,

v.

SHELTER FINANCIAL SERVICES, et al., Defendants.

No. 83–4448–CV–C–5.

United States District Court,
W.D. Missouri,
Central Division.

Oct. 24, 1984.

Timothy C. Harlan, Columbia, Mo., D. Eric Sowers, Kennedy & Sowers, St. Charles, Mo., for plaintiff.

Richard S. Brownlee, III, John E. Burruss, Jr., Jefferson City, Mo., for defendants Shelter Financial and Shelter Insurance.

Dale C. Doerhoff, Jefferson City, Mo., for defendant Murfreesboro.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Defendant Shelter Financial Services, Inc. (Shelter Financial) is a consumer loan company and a frequent user of consumer reports as defined in the Fair Credit Reporting Act (FCRA). 15 U.S.C. § 1681a(d). The Credit Bureau of Murfreesboro, Inc. (Murfreesboro) is a consumer reporting agency as defined in the FCRA. *Id.* § 1681a(f). Shelter Financial and Murfreesboro had a working relationship whereby the loan company would request and obtain consumer reports concerning prospective borrowers.

Plaintiff worked for Shelter Financial as its Murfreesboro, Tennessee branch manager until April 4, 1983. On that date, plaintiff voluntarily announced his resignation. On April 5, 1984, Shelter Financial requested and obtained from Murfreesboro a consumer report summarizing plaintiff's recent credit history. Shelter Financial did not represent to Murfreesboro the specific purposes for which the report was requested; instead, Shelter Financial and Murfreesboro operated under a pre-existing agreement by which the loan company certified that all requests for consumer reports would be for one of the purposes authorized by the FCRA.

■ There can be no dispute but that the report provided by Murfreesboro to Shelter Financial was a consumer report. The information contained in the report bore directly on plaintiff's credit standing and undoubtedly was both *"expected to be used"* and *"collected* [by Murfreesboro] *for the purpose of"* evaluating plaintiff's creditworthiness. *See* 15 U.S.C. § 1681a(d);

*Heath v. Credit Bureau Service of Sheridan, Inc.,* 618 F.2d 693, 696 (10th Cir.1980); *Boothe v. TRW Credit Data,* 523 F.Supp. 631, 634 (S.D.N.Y.1981). Nor is there any dispute but that Shelter Financial intentionally obtained the report from Murfreesboro. Thus, the crucial issue is whether Shelter Financial arguably had a proper purpose in requesting the report.

■ The FCRA sets forth an exclusive list of permissible purposes for which consumer reports may be obtained. *See* 15 U.S.C. § 1681b. Only two of these permissible purposes are at issue in the instant case. First, Shelter Financial asserts that it obtained the report on plaintiff "for employment purposes." *See* 15 U.S.C. § 1681b(3)(B). That purpose cannot justify defendant's actions in the instant case, however, because the undisputed facts of the case contradict the statutory definition of "employment purposes."

> The term "employment purposes" when used in connection with a consumer report means a report for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee.

15 U.S.C. § 1681a(h). Here, it is uncontradicted that defendant requested the consumer report *after* plaintiff had announced his resignation from Shelter Financial. Consequently, defendant cannot invoke the "employment purposes" provision to justify its actions; there is simply no evidence that the company obtained plaintiff's consumer report in connection with any employment decision.

■ Shelter Financial's second argument in justification of its actions is that it had "a legitimate business need for the information" in the consumer report. *See* 15 U.S.C. § 1681b(3)(E). Specifically, defendant contends that it obtained the report because it was surprised when plaintiff suddenly announced his resignation and wanted to ascertain if plaintiff had been embezzling funds from the company.

Assuming *arguendo* that the evidence conclusively establishes that this was defendant's motivation for obtaining the consumer report, the Court holds that this defense is insufficient as a matter of law. The FCRA does *not* authorize the use of consumer reports whenever a user has a legitimate business need for the information; instead, the user must have a "legitimate business need for the information *in connection with a business transaction involving the consumer.*" 15 U.S.C. § 1681b(3)(E) (emphasis added). Defendant has not adduced a shred of evidence indicating that it requested plaintiff's consumer report "in connection with" a business arrangement involving plaintiff. Therefore, the Court holds that the evidence in this case establishes that Shelter Financial willfully violated the FCRA as a matter of law. *See Heath v. Credit Bureau of Sheridan, Inc.,* 618 F.2d at 696 ("Congress meant to prevent intrusions into consumers' private affairs when no legitimate transaction was actually imminent"); *Boothe v. TRW Credit Data,* 557 F.Supp. 66, 70 (S.D.N.Y.1982) (absent "consumer relationship" between requesting party and subject of consumer report, investigation of suspected counterfeiter is not a proper purpose under FCRA); *Henry v. Forbes,* 433 F.Supp. 5, 9 (D.Minn.1976) (§ 1681b(3)(E) justifies acquisition of consumer report only if there is a "consumer relationship" between requesting party and subject of report). Consequently, although he has not shown any actual injury resulting from Shelter Financial's violation of the FCRA, plaintiff is entitled to nominal damages in the sum of one dollar and punitive damages in an amount to be determined by the jury. *See* 15 U.S.C. § 1681n; *Boothe v. TRW Credit Data,* 557 F.Supp. at 71–72.

In accordance with the foregoing, it is hereby

ORDERED that plaintiff's motion for a directed verdict is sustained. It is further

ORDERED that defendant's motion for a directed verdict is overruled.