MULLEN ET AL. *v.* AL CASTRUCCI
FORD, INC. ET AL.

(No. 86-CV-0280—Decided
December 4, 1986.)

Court of Common Pleas of
Clermont County.

*John Woliver*, for plaintiffs.
*Robert G. Stachler*, for defendant
Al Castrucci Ford, Inc.

ROBERT P. RINGLAND, J. This matter came on to be heard on November 4, 1986 in regard to the motion filed by defendant Al Castrucci Ford, Inc. ("Castrucci"). The defendant sought summary judgment on all three causes of action plaintiffs assert against it. At the hearing, the court denied summary judgment on the first claim but granted it on plaintiffs' third claim of wrongful invasion of privacy.

Plaintiffs' first two causes of action are based on the Fair Credit Reporting Act, Section 1681 *et seq.,* Title 15, U.S. Code. In their first claim, plaintiffs allege that defendant Castrucci obtained a consumer report about them from the Credit Bureau of Cincinnati, the co-defendant, in violation of Sections 1681b and 1681q. Section 1681b lists the permissible purposes for which a consumer reporting agency may furnish a credit report known as a consumer report under the Act. Section 1681q imposes criminal liability on any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses. Violations of these sections, plaintiffs assert, entitle them to damages under Section 1681n, civil liability for willful noncompliance.

The Fair Credit Reporting Act ("FCRA") also provides civil liability, for negligent noncompliance with its requirements, on consumer reporting agencies and users of the information. Section 1681o. Unlike their first claim, plaintiffs' pleading in the second claim does not allege specific sections of the Act for which defendant Castrucci should be held negligently liable.

While this decision is primarily concerned with plaintiffs' second claim on negligent noncompliance, discussion of the first claim is necessary due to the development of the case law under the FCRA and the opportunity to resolve certain issues suitable for pretrial determination.

A fact which is not in dispute in this lawsuit is that defendant Castrucci's agent, Kenneth Castrucci, did obtain a consumer report about the plaintiffs from the co-defendant. What the controversy concerns is whether defendant Castrucci did so for a permissible purpose under the FCRA.

Defendant Castrucci contends that

the only purpose for which it requested the credit report was to obtain the address of plaintiff Glenn Mullen. The address was needed, defendant explains, because the two, plaintiff and Joe Conley Ford, Inc., were co-defendants in a separate lawsuit filed by a Mildred Bowman. The Bowman lawsuit arose because plaintiff Glenn Mullen, while an employee with Joe Conley Ford, Inc. in December 1983, sold a car to Bowman which she later found to be unsatisfactory. Mullen quit his employment a year before the suit was filed on January 22, 1985. One day later, defendant Castrucci acquired controlling shares of Joe Conley Ford, Inc. and, as a result of this transaction, the Castrucci agency was substituted as the defendant employer a short time later.

The affidavit of Kenneth Castrucci, vice president and general manager of the defendant car dealership, states that after unsuccessfully searching the telephone directory and inquiring about Mullen's whereabouts with his previous employers, he obtained the consumer reports on the two plaintiffs on August 10, 1985. He also states that at the time he procured the reports he believed that the purpose for which he intended to use the information was legally permissible. Another affidavit, that of defendant's used car manager, Joey Conley, likewise states that Mullen could not be located although Conley does say that he discussed the Bowman litigation with plaintiff Glenn Mullen after the company was served with the summons and complaint.

In his affidavit, plaintiff Glenn Mullen affirms the fact that he had discussions with Joey Conley and cites these discussions as his reason for disputing affiant Castrucci's statement about the purpose for which the reports were obtained. Plaintiff also submitted a letter written to his attorney in which Kenneth Castrucci denies that he obtained the consumer reports. This letter, which indicates that defendant Castrucci had no purpose in obtaining the information from the credit bureau, was one of the bases for the court's denial of defendant's motion for summary judgment on plaintiffs' first claim.

In his memorandum, defendant's counsel makes the threshold argument that plaintiffs' two FCRA claims cannot be predicated on Section 1681b inasmuch as this section refers to duties imposed on a consumer reporting agency, not on users of the information. The section begins with the following language: "*A consumer reporting agency* may furnish a consumer report under the following circumstances and no other * * *." (Emphasis added.) In *Hansen* v. *Morgan* (C.A. 9, 1978), 582 F. 2d 1214, the court addressed this same argument and turned it aside by linking Section 1681b with Section 1681q. The link forged by the court was a strong one since it set forth a standard for establishing civil liability on users of consumer reports. *Id.* at 1219. The court stated that the standard for determining when a consumer report has been obtained under false pretenses (Section 1681q) will usually be defined in relation to the permissible purposes for obtaining consumer reports enumerated in Section 1681b. *Id.*

One method by which *Hansen* arrived at the above standard was through its examination of the declared purpose of the FCRA. That purpose, the decision states, "is to assure that 'consumer credit, personnel, insurance and other information' is collected, disseminated and used in a manner which will protect the interest of the consumer in 'confidentiality, accuracy, relevancy, and proper utilization of such information * * *.' " *Id.* at 1220. While the FCRA's principal mechanism for achieving this goal is through regulation of consumer report-

ing agencies, *Hansen* notes that requirements are also imposed on users of the information because of the following reason:

"* * * This was necessary because the objectives of the act could be defeated if users could obtain information from consumer reporting agencies under false pretenses with impunity. Even consumer reporting agencies acting in complete good faith cannot prohibit illicit use of consumer information if users are not bound to obtain consumer reports only for permissible purposes. Section 1681q is a response to this concern." *Id.*

Consequently, *Hansen* dispels defendant's initial argument about the applicability of Section 1681b to consumer reporting agencies alone.

*Hansen* does, however, create some confusion about whether Section 1681q can be the springboard for both of plaintiffs' FCRA claims. At one point the decision states that violation of the section forms a basis of civil liability under either Section 1681n or 1681o, yet it concludes with the statement that noncompliance with 1681q thereby forms a basis of liability under Section 1681n alone. *Id.* at 1219 and 1221.

In *Kennedy* v. *Border City Sav. & Loan Assn.* (C.A. 6, 1984), 747 F. 2d 367, 368, at fn. 1, the Sixth Circuit Court of Appeals corrected the first of the two *Hansen* statements on this issue by noting:

"* * * Since violation of Section 1681q occurs only when an individual acts knowingly and willfully, Section 1681n rather than Section 1681o is the proper vehicle for civil liability for violations of Section 1681q." See, also, *Rice* v. *Montgomery Ward & Co.* (M.D. N.C. 1978), 450 F. Supp. 668, 671.

Thus, the foregoing discussion links Sections 1681b, 1681q and 1681n in the following manner: A user who allegedly obtains information from a consumer reporting agency for an impermissible purpose raises the issue that the user did so under false pretenses which, in turn, can lead to civil liability for willful noncompliance with the requirements of the FCRA, under Section 1681n. Under *Kennedy*, however, the same set of circumstances does not lead to civil liability under Section 1681o, negligent noncompliance with the Act.

The next issue then is whether plaintiffs have alleged some other genuine issue of material fact to forestall summary judgment on their FCRA negligence claim. Their counsel has suggested only one other circumstance, a procedural one which again involves Section 1681b to advance the claim. Specifically, counsel states that defendant Castrucci could have properly proceeded under Section 1681b(1) by obtaining a court order requiring the credit bureau to release the plaintiffs' consumer reports or, simply, their address for defendant's use in the Bowman litigation. To date, no case law has apparently developed on this issue. However, a review of all the sections of Section 1681 *et seq.* indicates only one section where a consumer reporting agency can be contacted for information identifying a consumer. Section 1681f permits a *government agency* to obtain information about a consumer, but "limited to his name, address, former addresses, places of employment, or former places of employment * * *." Inasmuch as the car dealership is not a government agency, the court finds it unlikely that the defendant would have been able to successfully obtain a court order for the stated purpose. Therefore, defendant cannot be found negligent for failing to pursue this means and is thus granted summary judgment on plaintiffs' Section 1681o negligence claim.

*Judgment accordingly.*