Stan HAMMONS, Plaintiff,

v.

ENTERPRISE LEASING COMPANY—
SOUTHWEST, a Texas corporation,
Defendant.

No. Civ–97–742–A.

United States District Court,
W.D. Oklahoma.

Feb. 26, 1998.

Blake Virgin, Norman, OK, for Plaintiff.

Tom E Mullen, Beverly S Pearson, Fenton Fenton Smith Reneau & Moon, Oklahoma City, OK, for Defendant.

### ORDER

ALLEY, District Judge.

Before the Court are cross-motions for summary judgment filed by plaintiff on January 20, 1998 and defendant on February 9, 1998. Each party has responded in opposition to the other's motion. Both seek a determination under Fed.R.Civ.P. 56 whether defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, under the circumstances. For reasons that follow, the Court finds that it did not and grants summary judgment to defendant.

### MATERIAL UNDISPUTED FACTS

Stan Hammons rented a car from Enterprise Leasing company on September 1, 1995 after his car was damaged in a collision. Hammons signed a rental contract identifying himself as renter and giving personal information, including credit card information. The contract provided for rental charges to be billed to an insurance company, National Carriers. However, the contract also stated as follows: "Renter authorizes Owner to verify through credit agencies or other sources, personal and credit information provided by Renter ." (Rental Agreement at 2, Ex. 1, Def.'s Br. Opp'n Pl.'s Mot. & Supp. Def.'s Mot.) Hammons admits that he was aware of this provision but denies that it was applicable.

Hammons did not return the rental car within the time period authorized by National Carriers.[1] Enterprise tried to contact

1. Hammons attempts to create a dispute about the date on which National Carriers' authoriza-

Hammons using information on the rental contract and charged a $150 deposit to the credit card number he had supplied.[2] Enterprise later obtained a credit report on Hammons from Credit Bureau of Oklahoma City in an effort to verify his personal information.

## STANDARDS GOVERNING SUMMARY JUDGMENT

Summary judgment is appropriate if the evidence on file "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a summary judgment motion, a court must view all facts and inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the evidence leads to only one reasonable conclusion, summary judgment is proper. *Id.* at 250.

## DISCUSSION

■ The Act insures that credit reporting agencies will respect a consumer's right to privacy by allowing agencies to furnish reports only in certain approved circumstances. *Clark v. State Farm Fire & Cas. Ins. Co.,* 54 F.3d 669, 671 (10th Cir.1995). One circumstance applies here: "In accordance with the written instructions of the consumer to whom it relates." 15 U.S.C. § 1681b(a)(2).

Hammons admittedly gave written authorization for Enterprise to verify his personal information "through credit agencies or other sources." (Rental Agreement at 2, Ex. 1, Def.'s Br. Opp'n Pl.'s. Mot. & Supp. Def.'s Mot.) He understood that this provision authorized Enterprise to obtain a credit report on him if it so desired; he simply denies that Enterprise needed one.

Hammons bases his opposition to summary judgment upon proposed limitations of the

authorization's duration and purpose. He has testified that he believed the provision only authorized Enterprise to obtain a report in order to evaluate his creditworthiness to lease a car and only authorized Enterprise to check his credit before leasing him a vehicle: "I was authorizing them to check my credit for the purpose of obtaining the vehicle that day.... [I]f they wanted to check my credit, prior to leasing me that vehicle, then I was authorizing them to do that, but nothing else." (Hammons Dep. at 19–20.) These limitations do not appear in the contract, however, and Hammons does not contend that such limitations were orally discussed:

Q (By Ms. Pearson) Did anyone at Enterprise ever tell you that they would not be checking your credit for any reason, other than just to allow you to take the vehicle that day?

A No. It was just the fact that they seemingly approved it.

Q So you thought, because they had approved your rental of the vehicle, then there would be no further need for them to check your credit?

A That's correct.

(Hammons Dep. at 20–21.)

Hammons also implies a limitation on the authorization from the circumstances of the rental transaction. He contends (somewhat inconsistently) that Enterprise did not need to check his creditworthiness when it agreed to rent him the car because he was not responsible for the rental charges. (Hammons Dep. 40–41.) Because National Carriers had agreed to pay, Hammons argues that his credit was never Enterprise's concern. (Hammons Dep. at 53; Pl.'s Resp. Def.'s Mot.Summ.J. at 7–8.) The contract itself belies this contention, stating in highlighted print directly above Hammons' signature: "MY SIGNATURE BELOW IS CONSID-

tion ended. He references an unidentified document that appears to be a computer-generated report of some kind. (Call Back Notes, Ex. D, Pl.'s Resp. Def.'s Mot.Summ.J .) There is no dispute, however, that the authorization ended before Hammons returned the rental car to Enterprise. Indeed, he never returned it. On September 13, 1995, Enterprise learned that the car had been involved in an accident and had been towed to a garage.

2. Hammons purports to dispute whether Enterprise tried to contact him. However, he presents no fact or evidence to counter the affidavit testimony supplied by Enterprise. He cites only his deposition testimony stating that he does not remember being told by his ex-wife Becky (whose phone number he gave Enterprise) that Enterprise had called for him. In any event, any dispute on this point is not material.

ERED TO HAVE BEEN MADE ON ANY APPLICABLE CREDIT CARD VOUCHER AND I AUTHORIZE ENTERPRISE TO PROCESS SUCH VOUCHER FOR ADVANCE DEPOSITS AND CHARGES INCURRED, **INCLUDING PAYMENTS REFUSED BY A THIRD PARTY TO WHOM BILLING WAS DIRECTED.**" (Rental Agreement at 1, Ex. 1, Def.'s Br. Opp'n Pl.'s Mot. & Supp. Def.'s Mot. (emphasis added).) A similar provision appears in capitalized print on the reverse side of the contract. (Rental Agreement at 2, ¶ 17, Ex. 1, Def.'s Br. Opp'n Pl.'s Mot. & Supp. Def.'s Mot.)

In short, Hammons argues that disputes exist as to whether the parties had an enforceable contract and as to its proper interpretation based on his subjective belief about the meaning of the unambiguous rental agreement. (Pl.'s Resp. Def.'s Mot.Summ.J. at 8–9.) This argument is factually and legally untenable.

 Given the broad written authorization Hammons gave Enterprise, Enterprise did not violate § 1681b by obtaining his credit report, regardless whether Enterprise's purpose was otherwise permitted by the Act or whether Enterprise satisfied its contract with Credit Bureau of Oklahoma City. *See Malbrough v. State Farm Fire & Cas. Co.* No. 96–1540, 1997 WL 159511, *3–4 (E.D.La. March 31, 1997) (finding that a consumer's written "authorization" satisfies the Act's requirement of written "instructions"); *see also* 16 C.F.R. § 604(2) (consumer's written authorization "creates a permissible purpose for furnishing the report"). Enterprise also did not violate § 1681q, which prohibits obtaining a credit report under false pretenses. Hammons has presented no facts or evidence to show that Enterprise requested "information for a purpose not permitted by § 1681b while representing to the reporting agency that the report [would] be used for a permissible purpose." *Zamora v. Valley Fed. Sav. & Loan Ass'n,* 811 F.2d 1368, 1370 (10th Cir.1987). Enterprise is, therefore, entitled to a judgment in its favor as a matter of law.

### CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Partial Summary Judgment as to Liability of Defendant is DE-

NIED. Judgment will be entered accordingly.

### *JUDGMENT*

Pursuant to the Order issued the 26th day of February, 1998, summary judgment is entered in favor of the defendant, Enterprise Leasing Company–Southwest, and against the plaintiff, Stan Hammons.

